# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

ZUBERLON WILLIAMS,

    Plaintiff,

v.                                                      Case No.: 5:18-cv-97-TKW/MJF

EDDY E. HERNANDEZ PEREZ, M.D.,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant Dr. Eddy E. Hernandez Perez's amended motion to dismiss Plaintiff Zuberlon Williams's second amended complaint. (Doc. 36). On May 24, 2019, Williams responded in opposition. (Doc. 39). For the reasons set forth below, the undersigned recommends that Dr. Hernandez's motion to dismiss be granted.[1]

**I.**    **Background**

Williams filed this civil rights action pursuant to 42 U.S.C. § 1983 against Dr. Hernandez for allegedly violating Williams's Eighth Amendment rights by failing

---

[1] This case was referred to the undersigned to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b); Fed R. Civ. P. 72(b).

to properly treat Williams's injured ankle. (Doc. 1 at 1, 5-6, 8). Williams seeks declaratory, injunctive, and monetary relief. (*Id*. at 9). The relevant facts are taken from Williams's second amended complaint, which are assumed to be true for the purpose of the motion to dismiss.

On June 26, 2017, while incarcerated by the Florida Department of Corrections, Williams experienced pain in his ankle due to a dog bite he suffered in 2005. (Doc. 10 at ¶ 1). That same day, Williams executed a sick-call request. Nurse Howell examined Williams. She informed him that his upper right ankle was swollen. (*Id*. at ¶ 2). Later, Dr. Hernandez—who was employed by the company "Corizon Health"—examined Williams and ordered x-ray images of Williams's ankle.[2] (*Id.* at ¶¶ 3-4). Dr. Hernandez told Williams that the swelling would subside on its own and that he was not "eligible" for orthopedic boots. Dr. Hernandez also prescribed ibuprofen for Williams's pain. (Doc. 10 ¶¶ 4-5, 7).

Williams claims that Dr. Hernandez's acts and omissions violated his constitutional rights insofar as Dr. Hernandez failed to treat him despite the fact that Williams was in pain, had trouble standing for long periods of time, had swelling in

---

[2] Williams's second amended complaint does not allege the specific date that Dr. Hernandez examined him. Williams only alleges that he was referred to Dr. Hernandez after being examined by Nurse Howell on June 26, 2017. (Doc. 10 at 5 ¶¶ 3-4).

his ankle, and his ankle injury had "not healed from the inside." (Doc. 10 at ¶¶ 5-6; pp. 8-10). Williams contends that Dr. Hernandez should have prescribed orthopedic boots for Williams because a different doctor—Dr. Lidell of Lake Butler—prescribed an orthopedic boot in 2006.

## II.  Standard of Review

Motions to dismiss for failure to state a claim are governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation and citation omitted); *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015).

A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citation omitted). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678, 129 S. Ct. at 1950 (quotation and citation omitted). And "bare assertions" that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681, 129 S. Ct. at 1951 (quotation and citation omitted). Courts hold a *pro se* complaint to "less stringent standards than formal pleadings drafted by lawyers" and accordingly construe it "liberally." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014) (citation omitted).

## III.  Discussion

Dr. Hernandez asserted two independent reasons to dismiss Williams's second amended complaint: (1) Williams failed to state a claim for deliberate indifference to a serious medical need; and (2) any claim against Dr. Hernandez in his official capacity is barred by the Eleventh Amendment.

A.     **Williams's Individual-Capacity Claim**

"The treatment a prisoner receives in prison and the conditions under which he is confined" is governed by the Eighth Amendment. *Farrow v. West*, 320 F.3d 1235, 1242 (11th Cir. 2003) (citing *Helling v. McKinney*, 509 U.S. 25, 31, 113 S. Ct. 2475, 2480 (1993)). "'[W]hen the State takes a person into custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.'" *Helling*, 509 U.S. at 32, 113 S. Ct. at 2480 (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Serv.*, 489 U.S. 189, 199-200, 109 S. Ct. 998, 1005-06 (1989)).

The Eighth Amendment prohibits infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The Supreme Court has held that a "prison official's 'deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.'" *Farrow*, 320 F.3d at 1243 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 291 (1976) (quotation marks and citations omitted). In other words, because an inmate "must rely on prison authorities to treat his medical needs," prisons officials have an "obligation to provide medical care" for inmates, and failure to meet that obligation can constitute a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 103, 97 S. Ct. at 290; *see West v. Atkins*, 487 U.S.

Page 5 of 17

42, 56, 108 S. Ct. 2250, 2259 (1988) (noting that a state has "an affirmative obligation to provide adequate medical care" to prisoners).

But "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Farrow*, 320 F.3d at 1243 (quoting *McElligott v. Foley,* 182 F.3d 1248, 1254 (11th Cir. 1999) (citation omitted)). To state an Eighth Amendment claim for deliberate indifference to a serious medical need, a plaintiff must allege that:

(1) he had a serious medical need;

(2) the defendant was deliberately indifferent to that need; and

(3) there is a causal connection between the defendant's act or omission and the constitutional deprivation.

*Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009); *Rodriguez v. Sec'y, Dep't of Corr.*, 508 F.3d 611, 625 (11th Cir. 2007); *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). This standard includes an objective component—"that the deprivation was serious enough to constitute cruel and unusual punishment"—and a subjective component—deliberate indifference. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012); *Taylor*, 221 F.3d at 1257. Thus, courts "considering a prisoner's claim must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the

alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 999 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303, 111 S. Ct. 2321, 2324, 2326 (1991)).

### 1. *A Serious Medical Need*

Because "society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson*, 503 U.S. at 9, 112 S. Ct. at 1000 (quoting *Estelle*, 429 U.S. at 103-04, 97 S. Ct. at 290-91). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243 (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)); *Mann*, 588 F.3d at 1307. In either of those cases, the medical need is serious if it is "one that, if left unattended, 'pos[es] a substantial risk of harm.'" *Farrow*, 320 F.3d at 1243 (citing *Taylor*, 221 F.3d at 1258); *Mann*, 588 F.3d at 1307.

Here, Williams alleges that his ankle injury had "healed from the outside but not healed from the inside." (Doc. 10 at 5-6). Williams states that as a result he

experienced symptoms of "malignant osteochondroma,"[3] including pain and "swelling and mass enlargement," which he attributed to "[p]oor support walking in crocks year round [sic]." (*Id.* at 8). In his response to the motion to dismiss, Williams further alleges that he walks with a limp, that there is discoloration in the affected area, and that the pain "radiates" to his groin area. (Doc. 39 at 4). He also asserts that he "experiences pain every time he walks one quarter of a mile to his meals three times a day" and that the "affected area has increased in size and shape." (*Id.*).

Accepting Williams's allegations as true and construing them in the light most favorable to him, these allegations are sufficient to state the first element of a claim for deliberate indifference, namely that Williams had a serious medical need. *See Lepper v. Nguyen*, 368 F. App'x 35, 39 (11th Cir. 2010) (holding that a hand injury which showed discoloration, deformity, mild swelling, numbness and crepitus "certainly qualified" as an objectively serious medical need); *Ancata v. Prison Health Serv., Inc.*, 769 F.2d 700, 702-03 (11th Cir. 1985) (holding that swollen ankles, inability to sleep, chills, tingling and numbness of hands, hyperventilation, severe back and leg pain, and double vision was a serious medical need).

---

[3] Osteochondroma "is an overgrowth of cartilage and bone that happens at the end of the bone near the growth plate . . . ." John Hopkins Medicine, *Osteochondroma*, https://www.hopkinsmedicine.org/health/conditions-and-diseases/osteochondroma, (last visited Dec. 27, 2019).

### 2. *Deliberate Indifference*

Deliberate indifference is a higher standard than simple negligence and entails three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow*, 320 F.3d at 1245 (citing *McElligott*, 182 F.3d at 1255); *Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007) (citing *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005)); *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013). "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (citing *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)); *see also Farmer v. Brennan*, 511 U.S. 825, 839, 114 S. Ct. 1970, 1980 (1994) (defining deliberate indifference as conduct that is reckless; that evinces a knowing, conscious disregard). "An official disregards a serious risk by more than mere negligence 'when he or she knows that an inmate is in serious need of medical care, but he or she fails or refuses to obtain [or intentionally delays] medical treatment for the inmate.'" *Nam Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017) (citations omitted).

Of course, a complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. *Harris v. Coweta*, 21 F.3d 388, 393 (11th Cir. 1994). But "where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir. 1991) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). In other words, a mere difference in a medical opinion between a doctor and an inmate as to the inmate's diagnosis or course of treatment does not establish deliberate indifference. *Id.* at 1505; *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that when an inmate receives medical treatment but desires a different mode of treatment, the care provided does not amount to deliberate indifference). And whether governmental actors should have employed "additional diagnostic techniques or forms of treatment" is a "classic example of a matter for medical judgment" and, therefore, is not an appropriate basis for liability under the Eighth Amendment. *See Estelle*, 429 U.S. at 107; 97 S. Ct. at 293.

Thus, "[w]hen an inmate has, in fact, received medical treatment, there will be a violation of the Eighth Amendment, only when the treatment was 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable

to fundamental fairness.'" *Id.* An inadvertent failure to provide adequate medical care, negligence, or a difference of opinion over proper medical treatment, all are insufficient to constitute an Eighth Amendment violation. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084 (1986) (noting that deliberate indifference requires "obduracy and wantonness" not "inadvertence or error in good faith"); *Estelle*, 429 U.S. at 105-07; *Mann*, 588 F.3d at 1307.

In this case, Williams has alleged only a disagreement with the medical judgment of Dr. Hernandez. Williams alleges that in 2006, a "Dr. Liddell" prescribed orthopedic boots for Williams. (Doc. 10 at 6 ¶ 8). Williams contends that this treatment—which occurred eleven years before Dr. Hernandez treated Williams—demonstrates that Dr. Hernandez was deliberately indifferent to Williams's medical needs insofar as Dr. Hernandez only prescribed ibuprofen and did not prescribe orthopedic boots. Williams states that Dr. Hernandez's treatment plan "clearly was not the solution to the problem." (*Id.* at p. 10 ¶7). Williams concedes, however, that Dr. Hernandez made the clinical determination that an orthopedic boot was not medically necessary after conducting a physical examination of Williams and ordering x-ray images of Williams's ankle. (*Id.* at 6 ¶ 10). Additionally, Williams does not allege that Dr. Hernandez's decision was based on anything other than Dr. Hernandez's medical judgment. Williams's allegations demonstrate, therefore, that

he simply disagrees with Dr. Hernandez's medical judgment. This mere disagreement with Defendant's medical judgment is insufficient to allege a claim of deliberate indifference to a serious medical need. *Estelle*, 429 U.S. at 107; 97 S. Ct. at 293 (holding that a claim that a physician failed to provide a plaintiff's preferred treatment is a "classic example as a matter for medical judgment" and not a basis for liability under the Eighth Amendment"); *Hamm*, 774 F.2d at 1575 (holding that when an inmate receives medical treatment but desires a different mode of treatment, the care provided does not amount to deliberate indifference); *Harris*, 941 F.2d at 1505 (holding that where "the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law").

In addition, Williams has not alleged facts indicating that the medical treatment he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris*, 941 F.2d at 1505. Rather, he simply asserts that a prescription for ibuprofen was "clearly not the solution to the problem." (Doc. 10 at 6). Even if the course of treatment selected by Dr. Hernandez was somehow deficient, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does

Page 12 of 17

not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106, 97 S. Ct. at 292; *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999). The inadvertent or negligent failure to provide adequate medical care "cannot be said to constitute 'an unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 105-06, 97 S. Ct. at 292; *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106, 97 S. Ct. at 292; *Bingham v. Thomas,* 654 F.3d 1171, 1176 (11th Cir. 2011).

Consequently, accepting Williams's allegations as true and construing them in the light most favorable to him, Williams has failed to allege that Dr. Hernandez's actions rose to the level of deliberate indifference. Further, Williams's conclusory assertion that the only reasonable course of treatment for his injured ankle was to prescribe orthopedic boots, does not allege enough facts "to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Accordingly, Williams has failed to state a viable Eighth Amendment claim against Dr. Hernandez.

### B.     Williams's Official-Capacity Claim

"Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 3105 (1985) (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S 658, 690 n.55, 98 S. Ct. 2018, 2035 n.55 (1978)); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Thus, in a section 1983 action "a claim against a defendant in his official capacity is the same as a claim against his employer." *Christman v. Saint Lucie Cty., Fla.*, 509 F. App'x 878, 879 (11th Cir. 2013) (citing *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 785 n.2, 117 S. Ct. 1734, 1737 n.2 (1997)); *Faulkner v. Monroe Cty. Sheriff's Dep't.*, 523 F. App'x 696, 701 (11th Cir. 2013) ("A suit against a person in their official capacity is to be treated as a suit against the entity."). Several district courts have held that this also applies to private entities, such as Corizon Health, that perform functions traditionally within the exclusive prerogative of the state. *See Rodriguez v. Asencio*, No. 3:17-cv-155-RV-HTC, 2019 WL 3916268, at *10 (N.D. Fla. July 29, 2019) (holding that an official-capacity claim against employees of Corizon Health or Centurion were claims against Corizon Health or Centurion), *adopted by* 2019 WL 3904224 (N.D. Fla. Aug. 19, 2019); *Pugliese v. Parker*, No. 18-1189-JDT-cgc, 2019 WL 2476753, at *3 (W.D. Tenn. June 12, 2019) (holding that the plaintiff's official-

capacity claim against the defendant doctor was a claim against Centurion Medical); *see Rees v. Corizon Med. Servs.*, No. 3:17-CV-588-JD-MGG, 2018 WL 1014232, at *4 (N.D. Ind. Feb. 22, 2018) (holding that "[t]o the extent that Rees seeks to hold Nurse Frye liable in her official capacity for enforcing Corizon's policy, that claim is merely duplicative of Rees' claim against Corizon").

Unlike personal liability that only requires the plaintiff to show that the official—acting under color of state law—caused the deprivation of the plaintiff's federal rights, "a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation . . . thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Graham*, 473 U.S. at 166, 105 S. Ct. at 3105 (citations omitted). In other words, to establish liability in the official capacity, a plaintiff first must allege that:

(1) his constitutional rights were violated;

(2) there was a custom or policy that constituted deliberate indifference to that constitutional right; and

(3) the policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). This "*Monell* policy or custom requirement applies in suits against private entities performing functions traditionally within the exclusive

prerogative of the state, such as the provision of medical care to inmates." *Buckner v. Toro*, 116 F.3d 450, 453 (11th Cir. 1997).

Here, Williams's Eighth Amendment official capacity claim against Dr. Hernandez was in effect a claim against Corizon Medical.[4] *See Rodriguez*, 2019 WL 3916268, at *10; *Pugliese*, 2019 WL 2476753, at *3. Williams has not alleged that Corizon has a custom or policy that caused a violation of his constitutional rights. In fact, the only allegations in Williams's complaint are that Dr. Hernandez examined Williams, requested x-ray images of Williams's ankle, prescribed ibuprofen for the pain, and made a determination that an orthopedic boot was not medically necessary. Because Williams failed to identify any custom or policy that led to the purported violation of his constitutional rights, Williams's Eighth Amendment official-capacity claim against Dr. Hernandez also should be dismissed.

## IV. Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. Defendant's motion to dismiss (Doc. 36) be **GRANTED** and this case be **DISMISSED.**

---

[4] Williams asserts that Dr. Hernandez is "an employee of Corizon Medical." (Doc. 39 at 4).

2. The clerk of the court be directed to close the file and terminate all pending motions.

At Panama City Beach, Florida, this <u>8th</u> day of January, 2020.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.